IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

GREGORY HAMILTON                                                                PLAINTIFF

VS.                                         CASE NO. 04-CV-1035

PILGRIM'S PRIDE CORPORATION                                          DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of the Defendant Pilgrim's Pride Corporation. (Doc. No. 33). The Plaintiff Gregory Hamilton has filed a response (Doc. No. 57). The Court finds the matter ripe for consideration.

## BACKGROUND

On April 24, 2002, the Plaintiff Gregory Hamilton was hired for a second tenure at the Defendant's chicken processing plant in El Dorado, Arkansas.[1] Hamilton worked in the de-bone department pulling chicken tenders. During this time, Hamilton began to experience pain in his hands and wrists. In September 2002, Hamilton was diagnosed with moderate carpal tunnel syndrome.

In November 2002, Hamilton's doctor placed him on work restrictions of not lifting, pushing or pulling over ten (10) pounds and not using knives or scissors. Hamilton continued to do his job of pulling tenders. While handling the cold meat, Hamilton's hands would get cold.

---

[1] On April 24, 2002, and throughout Hamilton's second tenure (April 2002-June 2003) at the El Dorado processing plant, the plant was owned and operated by ConAgra Poultry Company. However, in November 2003, Pilgrim's Pride purchased ConAgra, acquiring all its interests in the El Dorado plant. Accordingly, Pilgrim's Pride is the proper defendant in this action and will be referred to as such.

He was allowed to warm his hands in a bucket of warm water. Other workers doing the same job were also allowed to warm their hands in the same fashion.

On January 31, 2003, Hamilton's supervisor sent him to the H. R. office for failing to keep up with his job of pulling tenders. Hamilton returned with papers from the company nurse stating that he was scheduled for surgery and that he should be placed on light duty. Hamilton was reassigned to a light-duty position picking up meat off of the floor. He continued in this job until February 14, 2003, when he had surgery on his left hand and elbow.

Following his surgery, Hamilton was restricted to light duty work by his doctor. As a result, he would sit in the break room and perform light duty tasks such as keeping the break room clean, picking up trash and taking it out. A month or six weeks later, Hamilton was reassigned to a different light duty job picking stray feathers off of chickens that had already been through the de-feathering area.

On April 29, 2003, Hamilton went to the doctor for a follow-up appointment. His doctor stated that he was much improved and that he could return to full duty work effective May 5, 2003. On May 1, 2003, the company nurse instructed Hamilton not to lift, push or pull more than five pounds and not to use any kind of scissors or knives. Thereafter, on May 5, 2003, Hamilton was released by his doctor to return to full duty work.

When Hamilton returned to full duty, he was assigned the job of skinner machine operator. This job entailed picking up a piece of chicken, flipping it over and running it through the skinner. It did not require Hamilton to use scissors or knives or lift, push or pull anything over five pounds. Again, when Hamilton's hands got cold from handling the cold chicken, he was allowed to warm his hands by placing them in warm water. However, since he was working

on a machine, he had to walk 10 to 15 feet to where the bucket of warm water was located in order to warm his hands. Hamilton's co-workers also warmed their hands in the same fashion. Hamilton continued in this job until June 25, 2003, when he was terminated by the Defendant for walking off the job without permission.

During the time Hamilton operated the skinner machine, he worked the graveyard shift. He would work approximately eight hours a night, clocking in around 11:30 p.m. and clocking out the following morning around 8:00 a.m. During this time, there were occasions when all the meat was run before 8:00 a.m. When this happened, the workers who had finished their work could ask for permission to leave work early  On six mornings between May 5, 2003, and June 21, 2003, Hamilton clocked out and left work before 8:00 a.m. On May 5th and 6th, he clocked out at 7:25 a.m. On May 7th, he clocked out at 7:30 a.m. On May 28th, he clocked out at 3:20 a.m. and on May 30th he clocked out at 7:48 a.m. On June 21, Hamilton clocked out at 5:00 a.m. Most of the mornings that Hamilton clocked out early, he would ask permission before leaving. However, he claims he did not ask permission every time he left even though it was company policy that a worker had to ask before leaving early. Hamilton claims that he did not have to ask to leave because an exception had been made for him because he wasn't able to pick up heavy tubs or use scissors.[2]

On June 20, 2003, Hamilton clocked in to work at 11:30 p.m. The work was finished early that night. After all the meat was run, Hamilton's supervisor, Michael Blakely, told the skinner machine operators to go back to the back. Hamilton did not go. Rather, he left

---

[2] On the morning that their work was finished early, the employees in the same position as Hamilton would go to the back and help clean up. This clean up often involved tasks using scissors and handling heavy tubs.

work–clocking out at 5:00 a.m.  No one told Hamilton he could leave early.  He did not ask permission to leave or tell his supervisor he was leaving early.

On June 23, 2003, Hamilton reported to work and worked for about an hour before he learned that he was accused of walking off the job on June 21st .  Hamilton was told to go to the H.R. office.  When he got to the H.R. office, Hamilton was suspended from work pending an investigation of the incident.  On June 25, 2003, Hamilton reported back to work and was discharged for walking off the job without permission.  Hamilton did not file a grievance with the Union or complain to the H.R. Department regarding his discharge.

On December 9, 2003, Hamilton filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).  In his charge, Hamilton checked the box claiming discrimination based upon disability.  He stated that on June 21, 2003, he left work 30 minutes early, as he had for the past two months and that he was discharged on June 25, 2003, for walking off the job.  Hamilton also stated that he believed that he was discharged not because he left work early but because the Defendant regarded him as disabled.  On December 29, 2003, the EEOC issued Hamilton a Right to Sue letter.

On March 25, 2004, Hamilton filed this action claiming that he was discriminated against when the Defendant terminated him on June 25, 2003, in violation of the American with Disabilities Act of 1990, 28 U.S.C. § 12101, ("ADA").  He claims that he was terminated because the Defendant regarded him as disabled in violation of the Act.  The matter is now before the Court on Defendant's Motion for Summary Judgment.

STANDARD OF REVIEW

The standard of review for summary judgment is well established.  The Federal Rules of

Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials,

but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

In his Complaint, Hamilton alleges that the Defendant discriminated against him when it terminated him on June 25, 2003. He contends that the Defendant regarded him as disabled in violation of the American with Disabilities Act of 1990, 42 U.S.C. § 12101, ("ADA"). The Defendant contends that it is entitled to summary judgment because Hamilton can not make out a *prima facie* case of disability discrimination or show that its stated reason for Hamilton's discharge was pretext for such discrimination.

In discrimination cases brought pursuant to the ADA, the courts apply the familiar three-step burden shifting framework set out in *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 801-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Wenzel v. Mo.-Am. Water Co.,* 404 F.3d 1038, 1040 (8th Cir. 2005). Under this framework, an employee must first establish a *prima facie* case of discrimination by showing that 1) he is disabled within the meaning of the ADA; 2) he is qualified to perform the essential functions of a job, with or without accommodation; and 3) he suffered an adverse employment action because of the disability. *See Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1034 (8th Cir. 2005). If the employee can not make out a *prima facie* case of discrimination, the claim must fail as a matter of law.

If a *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Wenzel,* 404 F.3d at 1040 (citations omitted). This burden is not an onerous one. It is one of production, not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Once the employer meets its burden of articulating a legitimate, nondiscriminatory reason for its action, the employee is required to prove that the articulated reason is merely a pretext for discrimination. *Wenzel,* 404 F.3d at 1040 (citations omitted).

The Defendant has conceded for purposes of this Motion for Summary Judgment that Hamilton can establish the second element of his *prima facie* case–that he can perform the essential functions of his position with or without reasonable accommodation. However, it claims that Hamilton cannot establish the first and third elements of his *prima facie* case–that he has a disability within the statutory definition of the ADA or that he has suffered an adverse employment action because of the disability. Therefore, the threshold issue in this case is whether Hamilton had a disability within the meaning of the ADA.

To be deemed "disabled" under the ADA, an individual must: 1) have a physical or mental impairment that substantially limits one or more of his major life activities; 2) have a record of such impairment; or 3) be regarded as having such an impairment. 42 U.S.C. § 12102(2). Here, Hamilton contends that he is deemed disabled under the ADA because the Defendant regarded him as disabled.

Individuals who are regarded as having a disability, although not actually disabled, are protected by the ADA. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.CT. 2139, 144 L.Ed.2d 450 (1999). By including individuals who are regarded as disabled within the ambit of the ADA, Congress intended to combat the effects of stereotypes that "work to the disadvantage of persons with or regarded as having disabilities." *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir. 1995). There are two ways in which an employee can show that he was regarded as disabled withing the meaning of the ADA. He can show that his employer mistakenly believed

that he had a physical impairment that substantially limited one or more major life activities or that his employer mistakenly believed that an actual, though nonlimiting, impairment substantially limited one or more of his major life activities. *Sutton,* 527 U.S. at 489. Thus, to be regarded as disabled under the Act, the employer must regard the employee as having an impairment that substantially limits a major life activity.

In this case, Hamilton claims that the Defendant regarded him as disabled in the major life activity of working. In order to be regarded as disabled with respect to the major life activity of working, the employer must mistakenly believe that the employee's impairment substantially limits his ability to work. A substantial limitation is present only when the employee is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Conant v. City of Hibbing,* 271 F.3d 782, 784 (8th Cir. 2001)(quoting 29 C.F.R. § 1630.2(j)(3)(i)). Inability to perform one particular job does not constitute a substantial limitation on working. *See* 29 C.F.R. §1630.2(j)(3)(i); *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). An employee must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities. *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 488 (8th Cir. 1996).

Hamilton claims that the Defendant mistakenly believed that he was substantially limited in his ability to work because he was placed on work restrictions of not lifting, pushing or pulling more than five pounds and not using scissors or knives. However, there is no evidence that Defendant believed that these restrictions limited Hamilton's ability to work in a wide variety of jobs at the plant. In fact, the evidence shows that the Hamilton was placed in a variety of jobs after he was placed on work restrictions. After his surgery, Hamilton was assigned to a series of

light duty jobs which included cleaning the break room, picking up and taking out trash and picking stray feathers off of chickens.  He was later assigned the job of skinner machine operator.  Hamilton's work restrictions did not prevent him from being assigned other jobs in the plant and did not keep him from performing those jobs successfully.  The fact that the Defendant assigned Hamilton to these various jobs undermines Hamilton's claim that the Defendant regarded him as substantially limited in the major life activity of working.  *See Knutson v. Ag Processing,* 394 F.3d 1047, 1053 (8th Cir. 2005)(citing *Cooper v. Olin Corp., Winchester Div.,* 246 F.3d 1083 (8th Cir. 2001); *Miller v. City of Springfield,* 146 F.3d 612 (8th Cir. 1998)).

  Hamilton also argues that the Defendant's allowing him to leave work early when his work was completed and allowing him to warm his hands when they got cold showed that Defendant regarded him as disabled.  However, there is no evidence that these actions were accommodations made to Hamilton alone.  In fact, the evidence shows that Hamilton's co-workers were also allowed to leave early when they finished their work, as long as they had permission to leave.  It also shows that they were allowed to warm their hands when their hands got cold.  Hamilton was treated no differently than his co-workers.  There is simply no evidence that Hamilton received any special treatment because of a perceived disability on the part of the Defendant.

  The fact that the Defendant assigned Hamilton to a series of light duty jobs after his surgery, allowed him to go home after his work was completed and allowed him to warm his hands when they got cold does not generate a genuine issue of material fact that the Defendant regarded him as unable to perform a class of jobs or a broad range of jobs.  Thus, Hamilton has not established the first element of a *prima facie* case of a disability claim under the ADA.  The

Defendant is, therefore, entitled to summary judgment as a matter of law.

CONCLUSION

Based upon the foregoing reasons, the Court finds that the Defendant's Motion for Summary Judgment should be and hereby is **granted**. A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 7th day of February, 2007.

                                                  /s/Harry F. Barnes
                                                  Hon. Harry F. Barnes
                                                  United States District Judge